UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE GRAND JURY SUBPOENA GJ2020111968168 AND APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2705(B)<br><br>Twitter Account: @NunesAlt | SC NO. 1:20-sc-03082<br><br>**<u>Filed Under Seal</u>** |

### TWITTER, INC.'S MOTION TO QUASH SUBPOENA AND VACATE NONDISCLOSURE ORDER AND MEMORANDUM IN SUPPORT

#### INTRODUCTION

The government has issued a subpoena (the "Subpoena") for "[a]ll customer or subscriber account information" for the Twitter user @NunesAlt (the "Account") from October 1, 2020 to present. Under the First Amendment, the government cannot compel Twitter to produce information related to the Account unless it "can show a compelling interest in the sought-after material and a sufficient nexus between the subject matter of the investigation and the information it seek[s]." *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d 1, 4 (D.D.C. 2012) (internal quotation marks omitted). While Twitter does not have visibility into the purpose of the Subpoena, Twitter has serious concerns whether the government can meet this standard given the context in which it has received the Subpoena.

It appears to Twitter that the Subpoena may be related to Congressman Devin Nunes's repeated efforts to unmask individuals behind parody accounts critical of him. His efforts to suppress critical speech are as well-publicized as they are unsuccessful. He recently sued Twitter, attempting to hold it liable for speech by the parody Twitter accounts @DevinCow, @DevinNunesMom, @fireDevinNunes, and @DevinGrapes, and asking the court in that case to

order Twitter to disclose information identifying those accounts. Each of these accounts were engaged in anonymous political speech critical of Congressman Nunes. That suit was dismissed against Twitter in June 2020 because Twitter cannot be liable for information originating with a third-party user of its service, but it appears to still be an active lawsuit against the Twitter users @DevinCow and @DevinNunesMom. Shortly thereafter, Twitter received the Subpoena. Public Tweets posted by the Account indicate that it may be operated by the same user as @DevinNunesMom. Congressman Nunes's attorney also sought third-party discovery from Twitter to unmask the @DevinCow account in an entirely unrelated case.

Given Congressman Nunes's numerous attempts to unmask his anonymous critics on Twitter—described in detail herein—Twitter is concerned that this Subpoena is but another mechanism to attack its users' First Amendment rights. Recent litigation also alleges that Congressman Nunes may be using the government to unmask his critics. *See* Declaration of Hayden Schottlaender ("Schottlaender Decl."), Ex. D. Twitter respectfully asks the Court to determine whether the government has a "compelling interest" in obtaining the Account's basic subscriber information, or, on the other hand, is endeavoring to unmask someone merely for engaging in speech critical of Congressman Nunes. Indeed, "[t]he First Amendment limits the authority of the federal government to criminalize speech," *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d at 5, and in light of Congressman Nunes's repeated efforts to silence criticism against him, any complaint that gave rise to the Subpoena may be aimed at doing the same.

The Subpoena was also accompanied by a nondisclosure order, gagging Twitter from notifying the Account of the existence of the Subpoena (the "Gag Order"). The Court should vacate the Gag Order as inconsistent with the First Amendment. First, court orders that forbid speech are

"classic examples of prior restraints," *Alexander v. United States*, 509 U.S. 544, 550 (1993), and prior restraints on speech "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). As such, the Gag Order must be reviewed under strict scrutiny and further a compelling government interest. The Gag Order fails to pass strict scrutiny because the government has no compelling interest in preventing the Twitter user from even knowing about a subpoena that may infringe on his or her First Amendment right to anonymously criticize a politician. *See, e.g.*, *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d at 4 n.6 (Twitter user's "intervention is plainly appropriate where [his] First Amendment rights are at issue.") (collecting cases).

Second, the adverse results listed in the Gag Order are not likely to ensue from any disclosure because Twitter is preserving responsive identifying information.

Because the Subpoena and Gag Order violate both Twitter's and its user's rights protected by the First Amendment, the Subpoena should be quashed, and the Gag Order vacated.

## FACTUAL BACKGROUND

Over the past two years, Congressman Nunes and his campaign committee have brought at least nine lawsuits—including in this district—against individuals, the media, and one research and intelligence firm for either their disagreement with his political actions and policies, publishing statements that Congressmen Nunes deemed critical of himself, or hosting critical statements with which Congressman Nunes disagreed.[1] In 2019 alone, Congressman Nunes or his campaign committee brought lawsuits against the following:

---

[1] *See, e.g.*, *Nunes v. Meredith*, No. 1:21-cv-00078 (E.D. Cal.); *Nunes v. WP Co. LLC*, No. 1:20-cv-01405 (E.D. Va.); *Nunes v. WP Co. LLC*, No. 1:20-cv-01403 (D.D.C.); *Nunes v. Cable News Network, Inc.*, No. 1:20-cv-03976 (S.D.N.Y.); *Nunes v. Lizza*, No. 5:19-cv-04064 (N.D. Iowa); *Nunes v. Fusion GPS*, No. 1:19-cv-01148 (E.D.Va.); *Nunes v. Twitter, Inc.*, No. CL19001715-00 (Va. Cir. Ct.); *Nunes v. The McClatchy Co.*, No. CL19000629-00 (Va. Cir. Ct.); *Devin Nunes Campaign Comm. v. Seeley*, No. 279766 (Cal. Super. Ct.).

(1) a farmer and three other people for allegedly conspiring to impede his 2018 reelection prospects by exercising their First Amendment rights to petition the California Secretary of State, so that Congressman Nunes not be allowed to call himself a "farmer" on the ballot;[2]

(2) a research firm and a Democratic non-profit group for allegedly attempting to interfere with his investigation into Russia's intervention in the 2016 presidential election by leaking the "Steele Dossier";[3]

(3) Twitter, a political consultant, and two parody accounts—@DevinCow and @DevinNunesMom—for either hosting speech or engaging in speech critical of Congressman Nunes;[4]

(4) The McClatchy Company for stating that Congressman Nunes had a financial interest in a winery that one of its employees had sued for being asked to work during a yacht sex party;[5] and

(5) Hearst Magazines, Inc. and a journalist who published an article stating that Congressman Nunes's family dairy farm in Iowa is "[h]iding a [p]olitically [e]xplosive [s]ecret"—that it hires undocumented workers.[6]

Most of these lawsuits were either withdrawn by Congressman Nunes or dismissed on the grounds that (1) the speech at issue was either opinion, true, did not concern Congressman Nunes, or protected by the First Amendment, or (2) the complaint made conclusory allegations that were too

---

[2] *Devin Nunes Campaign Comm. v. Seeley*, No. 279766 (Cal. Super. Ct.).
[3] *Nunes v. Fusion GPS*, No. 1:19-cv-01148 (E.D.Va.).
[4] *Nunes v. Twitter, Inc.*, No. CL9-1715 (Va. Cir. Ct.).
[5] *Nunes v. The McClatchy Co.*, No. CL19000629-00 (Va. Cir. Ct.).
[6] *Nunes v. Lizza*, No. 5:19-cv-04064 (N.D. Iowa).

vague to state a claim.[7] In each of these cases, Congressman Nunes sought damages for what he believes were targeted attacks against his reputation, by being called names such as a "treasonous cowpoke" on Twitter,[8] and sought to unmask anonymous commenters critical of his job as a politician.

In his lawsuit against Twitter, Congressman Nunes served discovery requests to Twitter requesting the unmasking of several accounts critical of him. *See* Schottlaender Decl. ¶ 5, Ex. E. However, Congressmen Nunes's claims against Twitter were dismissed before Twitter had to comply with these discovery requests. *See* Schottlaender Decl. ¶ 5, Ex. F.

But his efforts to silence his critics have not stopped with his own lawsuits. Even in cases in which Congressman Nunes is not directly involved, his attorney has sought to unmask anonymous Twitter users critical of Congressman Nunes. In one such case, the plaintiff's attorney—who also represents Congressman Nunes in several lawsuits against the Congressman's critics—issued a third-party subpoena to Twitter seeking identifying information for 16 Twitter accounts, including @DevinCow, when the account @DevinCow appeared to have no relation to the underlying litigation.[9] *See Fitzgibbon v. Radack*, No. 3:19-cv-00477-REP (E.D. Va); *In Re Subpoena to Twitter, Inc.*, No. 3:20-mc-00005 (E.D. Va).

Indeed, the user at issue here appears to have been a party to one of Congressman Nunes's many superfluous lawsuits. On March 18, 2019, Congressman Nunes brought litigation against several Twitter users, including @DevinNunesMom, for defamation and other claims. *See*

---

[7] Congressman Nunes withdrew *Devin Nunes Campaign Comm. v. Seeley*, No. 279766 (Cal. Super. Ct.) and *Nunes v. The McClatchy Co.*, No. CL19000629-00 (Va. Cir. Ct.). In the remaining cases, the applicable courts granted motions to dismiss. *See, e.g.*, Order, *Nunes v. Lizza*, No. 5:19-cv-04064 (N.D. Iowa Aug. 4, 2020); Order, *Nunes v. Twitter, Inc.*, No. CL9-1715 (Va. Cir. Ct. July 24, 2020); Order, *Nunes v. Fusion GPS*, 1:19-cv-01148 (E.D. Va. Feb. 21, 2020).
[8] *See* Schottlaender Decl. ¶ 4, Ex. C, ¶¶ 9–10.
[9] Twitter did not produce any records in response to the subpoena. Before the court could rule on its motion to quash, the plaintiff withdrew the subpoena because the parties had reached a settlement. *See In Re Subpoena to re Twitter, Inc.*, Case No. 3:20-mc-00005, Dkt. No. 36 (E.D. Va).

Schottlaender Decl. ¶ 4, Ex. C. That suit sought to reveal the identity of the @DevinNunesMom account. *See* Ex. C., ¶¶ 9, 12, 27. Recently, the user whose identity is sought in the Subpoena posted on Twitter that he or she is the owner of this previously-suspended account and confirmed that he or she has indeed been sued by Congressman Nunes:[10]



In one particular Tweet, the user directed a message to Congressman Nunes:[11]

---

[10] *E..g.*, @NunesAlt, Twitter (Jan. 13, 2021, 1:41 AM), https://twitter.com/NunesAlt/status/1349245225647054849; @NunesAlt, Twitter, (Jan. 13, 2021, 1:41 AM), https://twitter.com/NunesAlt/status/1349245221876322306. *See also* @NunesAlt, Twitter (Dec. 18, 2020, 6:32 PM), https://twitter.com/NunesAlt/status/1340077411329687552?s=20 ("I am an American who dislikes Devin Nunes and I am using my first amendment right to criticize an elected member of our government, as the Founders intended. And that's why that [expletive] is suing me.").

[11] @NunesAlt, Twitter (Dec. 18, 2020, 11:36 PM), https://twitter.com/NunesAlt/status/1340154028848640000?s=20.



Seemingly unsuccessful in gaining any traction with this lawsuit and in therefore identifying the user, Twitter is concerned that a government investigation is now being used to target the same user for political speech on Twitter. As one recent lawsuit alleges, members of the public suspect that Congressman Nunes may be relying upon the government to unmask his critics. *See* Schottlaender Decl., Ex. D.

On November 24, 2020, Twitter received the Subpoena and Gag Order. *See* Schottlaender Decl. ¶ 2. With respect to the Account, the Subpoena requests: (1) "[n]ames (including subscriber names, user names, and screen names);" (2) "[a]ddresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);" (3) "[l]ocal and long-distance telephone connection records;" (4) "[r]ecords of session times and durations, and IP logs;" (5) [l]ength of service (including start date) and types of service utilized [sic];" (6) [t]elephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ('ESN'), Mobile Electronic Identity Numbers ('MEIN'), Mobile Equipment Identifier ('MEID'), Mobile Identification Numbers ('MIN'), Subscriber Identity Modules ('SIM'), MSISDN, International Mobile Subscriber Identifiers ('IMSI'), or International Mobile Station Equipment Identities ('IMEI'));" (7) "[o]ther subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ('IP') addresses);" and (8) "[m]eans and source of payment for

such service (including any credit card or bank account number) and billing records" ("Identifying Information"). Schottlaender Decl., Ex. A.

The Gag Order prohibits Twitter from "disclos[ing] the existence of the Subpoena to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of 90 days (commencing on the date of this Order)" because it finds "reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation." Schottlaender Decl., Ex. B. The Gag Order does not describe the basis for this finding, and Twitter has not received any information from the government about the "reasonable grounds" upon which the Gag Order was based. Schottlaender Decl. ¶ 3, Ex. B.

After receiving the Subpoena, Twitter's counsel promptly contacted the Assistant United States Attorney who had issued it. Schottlaender Decl. ¶ 4. Twitter's counsel explained Congressman Nunes's history of litigation and the Congressman's numerous prior attempts to unmask accounts critical of the Congressman. *Id.* Twitter's counsel asked whether the government could offer any information about its investigation that may alleviate Twitter's concerns. Counsel for the government stated that he understood Twitter's concerns and would attempt to learn more about the investigation and about what he could share with Twitter. *Id.* ¶¶ 4–5. Shortly thereafter, the government stated that it was investigating "potential violations of 18 U.S.C. Section 875(c) (threatening communications in interstate commerce)." *Id.* ¶ 6, Ex. G. Twitter asked whether the government could share the threatening communications at issue, or otherwise state whether those threats had been directed to Congressman Nunes. *Id.* The government replied that it would not provide any additional information about its investigation. *Id.* Accordingly, Twitter files the instant motion to ensure the Court is apprised of the additional facts described above.

# ARGUMENT

I.   **The Subpoena should be quashed if it violates the Twitter user's First Amendment right to engage in anonymous speech.**

Twitter asks that the Court scrutinize the government's legal and factual basis for seeking information about the Account. If the Subpoena seeks to unmask a Twitter user for engaging in protected speech critical of Congressman Nunes, as Twitter suspects could very well be the case given the litigation history detailed above, the Court should quash the Subpoena because it violates the First Amendment.

"[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,* 461 U.S. 138, 145 (1983) (internal quotation marks omitted). That protection is not based on "'the truth, popularity, or social utility of the ideas and beliefs which are offered.'" *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) (citation omitted). Indeed, "[s]peech about the government—especially speech critical of the government—is at the core of 'the freedom of speech.'" *Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 419 (D.C. Cir. 2012) (Randolph, J., concurring in part and dissenting in part). No truer is that statement than in its application to political speech, where "[t]o persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement.'" *Sullivan*, 376 U.S. at 271 (citation omitted). But for freedom of speech to endure, it must be afforded the "'breathing space . . . to survive.'" *Id.* at 272. And that includes the First Amendment right to remain anonymous. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("The freedom to publish anonymously extends beyond the literary realm.").

The people who use Twitter "ha[ve] a right under the First Amendment to post on the Internet, and to do so anonymously." *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d

1, 4 (D.D.C. 2012). Accordingly, the government cannot compel Twitter to produce information related to the Account unless it "can show 'a compelling interest in the sought-after material' and 'a sufficient nexus between the subject matter of the investigation and the information [it] seek[s].'" *Id.* (quoting *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. 1461 et seq.*, 706 F. Supp. 2d 11, 18 (D.D.C. 2009)). Although the government has not informed Twitter of the specific reason for identifying the user behind the Account, Twitter respectfully submits that based on the facts known to Twitter, the government may not be able to demonstrate any "compelling interest" in its effort to unmask the Account. And to the extent the government seeks information about the Account merely because it engaged in speech that may embarrass an elected official, no such compelling interest could exist. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 575 (1980) (absent overriding interest, First Amendment requires "freedom of communication on matters relating to the functioning of government"). Indeed, "[t]he First Amendment limits the authority of the federal government to criminalize speech." *In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d at 5. In light of Congressman Nunes's prior efforts to silence his critics based on speech he deems unfavorable, Twitter is concerned that criminalization of speech may be at issue here.

Twitter does not know what representations the government has made to this Court about the nature of the Subpoena and "threats via interstate commerce"; however, Twitter is compelled to apprise the Court of the additional facts described above, of which the Court may be unaware. The individual here appears to be engaged in clear First Amendment activity, discussing stances on current events, government policies, and one elected official in particular—Congressman

Nunes. In one recent post, the individual wrote this about a bill Congressman Nunes had sponsored:[12]



In another, the user posted an image of Congressman Nunes with text superimposed over his face:[13]



---

[12] *See* @NunesAlt, Twitter (Jan. 26, 2021, 4:15 AM), https://twitter.com/NunesAlt/status/1353994872349319168.
[13] *See* @NunesAlt, Twitter (Feb. 9, 2021, 4:31 AM), https://twitter.com/NunesAlt/status/1359072331457392641.

What these Tweets, and others the individual has posted, share are statements deserving of First Amendment protection. And, "an investigation threatening First Amendment rights, like any government investigation, [must] be justified by a legitimate law enforcement purpose that outweighs any harm to First Amendment interests." *See United States v. Mayer*, 503 F.3d 740, 753 (9th Cir. 2007).

A case involving an allegedly threatening Tweet about former Congresswoman and presidential candidate Michele Bachmann illustrates the potential problems with the Subpoena. In the Bachmann case, the government issued a subpoena to Twitter for identifying information about a user who the government was investigating potential violations of 18 U.S.C. § 875(c)—the same statute the government claims is the basis for its investigation in this case. *In re Grand Jury Subpoena*, *No. 11116275*, 846 F. Supp. 2d at 4 n.7. This Court denied the user's motion to quash the subpoena on First Amendment grounds after concluding that the Tweet was "a *prima facie* threat" that the government was entitled to further investigate. *Id.* at 8. The Court reached this conclusion after assessing the specific language of the Tweet at issue, and examining the account as a whole, characterizing it as "[o]ccasionally political but consistently vacuous" and "entirely without merit, comedic or otherwise," with a mere 736 followers. *Id.* at 3. But in doing so, the Court cautioned against allowing its ruling to be interpreted as a license to head down the "slippery slope" of permitting the government to "subpoena any Web site any time any anonymous user made any post containing a mere scintilla of violence." *Id.* at 8. Twitter is concerned that the Subpoena may slide down that slippery slope, and at this stage, it differs in material ways from the Bachmann case. Unlike the Bachmann case, the government will not disclose the nature of the alleged threat under investigation, and the Account appears to be devoted entirely to political parody with an audience (over 100,000 followers) many times larger than the fringe account at

issue in the Bachmann case. *See* @NunesAlt, Twitter, https://twitter.com/NunesAlt. And most importantly, nothing in the Bachmann opinion suggests that the former Congresswoman had Congressman Nunes's well-documented history of using the legal system to lodge frivolous complaints against online critics for the purpose of learning their identities.

As the custodian entrusted with the private identifying information that the government seeks, Twitter is concerned the Subpoena may not be supported by a legitimate law enforcement purpose, and that therefore, there cannot be any need—let alone a compelling need—for the government to unmask the user. As such, Twitter asks that the Court engage in a searching analysis of the government's bases for issuing the Subpoena in order to determine whether the Subpoena violates the First Amendment and should be quashed.

**II.     The Gag Order should be vacated because it cannot withstand strict scrutiny under the First Amendment.**

Gag orders, like "any system of prior restraints of expression," are subject to a "heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Any gag order issued under 18 U.S.C. § 2705(b) is therefore invalid unless the government "can demonstrate that it passes strict scrutiny—that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *see Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020) (gag orders to service providers are prior restraints subject to strict scrutiny under the First Amendment); *Matter of Search Warrant for [redacted].com*, No. 16–2316M, 2017 WL 1450314, at *7 (C.D. Cal. Mar. 31, 2017) ("Courts considering the issue have almost uniformly found that [gag orders to service providers] are prior restraints and/or content-based restrictions."); *Taucher v. Rainer*, 237 F. Supp. 2d 7, 13 (D.D.C. 2002) ("[T]he Supreme Court has specifically

and unequivocally demanded that the government show the most compelling reason for *any* prior restraint on speech.") (emphasis in original).

The government cannot clear the hurdle of strict scrutiny here, as it lacks a compelling interest in obtaining the Gag Order. First, as articulated above, Twitter questions the validity of the government's investigation *ab initio*, as it has declined to specify any threats on Twitter's platform by this individual. And even in the Bachmann case, which involved a *prima facie* threat of violence against a major presidential candidate by a fringe account, this Court allowed the affected Twitter user to intervene and advocate for his First Amendment right to engage in anonymous speech. *See In re Grand Jury Subpoena No. 11116275*, 846 F. Supp. 2d at 4 n.6. Given the material differences between this case and Bachmann's, including Congressman Nunes's repeated efforts to use the legal system to silence his critics, there is no compelling interest for issuance of a Gag Order that prevents Twitter from even notifying the individual at issue about the Subpoena and giving him or her a chance to decide whether to lodge his or her own objections.

Second, Twitter has preserved responsive Identifying Information for the Account, and therefore, there is no concern that any of the requested Identifying Information would be deleted.

And third, the government has not explained how disclosure of the Subpoena to the individual at issue could lead to adverse consequences, especially given the individual's apparent involvement in litigation brought by Congressman Nunes. To the extent the government believes the user is likely to destroy evidence or tamper with witnesses, Congressman Nunes's ongoing litigation efforts have already provided ample incentive for that conduct to occur. *Cf. In re Grand Jury Subpoena to Google Inc.*, No. 17-MC-2875 (JO), 2017 WL 4862780, at *2 (E.D.N.Y. Oct. 26, 2017) (where "the risk already exists that [ ] targets will take steps to flee, alter or destroy evidence, or otherwise impede the investigation's progress" the court may not be able

to "infer that [a provider]'s disclosure of the subpoena's existence would create or exacerbate any such risk"). Moreover, a lawsuit filed in this Court on March 3, 2021 indicates that members of the public suspect Congressman Nunes may be using the government to unmask his critics, and therefore, there is no need to maintain the secrecy of the Subpoena. *See* Schottlaender Decl., Ex. D.

As the Gag Order does not serve a compelling interest, this Court should vacate it.

## CONCLUSION

For these reasons, Twitter respectfully requests that the Court quash the Subpoena and vacate the Gag Order.

Dated: March 10, 2021                                     Respectfully submitted,

By: */s/ John K. Roche*
John K. Roche (D.C. Bar. No. 491112)
PERKINS COIE LLP
700 13th St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:  202-434-1627
Facsimile:  202-654-6211
JRoche@perkinscoie.com

Attorneys for Twitter, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, I sent a copy of Twitter, Inc.'s Motion to Quash Subpoena and Vacate Nondisclosure Order and Memorandum in Support via email to DCD_CMECF_CR@dcd.uscourts.gov, as prescribed on the "COVID-19 Clerk's Office Operations Information" page. I hereby certify that on March 10, 2021, I also served the same document by mail and email on counsel for the United States:

Michael J. Friedman
Assistant United States Attorney
555 4th Street, NW, Room #11-439
Washington, DC 20530
Telephone:  202-252-6765
Michael.Friedman@usdoj.gov

DATED:   March 10, 2021

*/s/ John K. Roche*
John K. Roche (D.C. Bar. No. 491112)
PERKINS COIE LLP
700 13th St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:  202-434-1627
Facsimile:  202-654-6211
JRoche@perkinscoie.com

Attorneys for Twitter, Inc.